UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

JOSEPH LUTHER STEARMAN,                                    Plaintiff/Counter Defendant,

v.                                                    Civil Action No. 3:15-cv-31-DJH-DW

FERRO COALS, INC.,                                         Defendant/Counter Claimant.

\* \* \* \* \*

**<u>MEMORANDUM OPINION AND ORDER</u>**

Joseph Stearman filed suit against his former employer, Ferro Coals, Inc., alleging that Ferro Coals wrongfully terminated him because of his age and failing health.  (Docket No. 1)  Ferro Coals denies Stearman's allegations and makes some of its own.  (D.N. 4)  Ferro Coals also moves this Court, pursuant to 28 U.S.C. § 1404(a), to transfer Stearman's case to the Eastern District of Kentucky, Lexington Division.  (D.N. 6)  For the reasons that follow, the motion to transfer will be denied.

**I.**

Ferro Coals hired Joseph Stearman to work in its sales division on May 4, 2009, when Stearman was 62 years old.  (D.N. 1, PageID # 2-3)  Although it is not entirely clear, the parties generally agree that some sort of contract came into existence then.  Ferro Coals points to an unexecuted "Employment Agreement," which purports to be just that.  (D.N. 4, PageID # 30; D.N. 4-1.)  Among its many provisions is the following clause: "Any action to enforce this Agreement or relating to this Agreement shall be brought exclusively in the state or federal court located in Fayette County, Kentucky and you hereby consent to jurisdiction in that court."  (D.N. 4-1, PageID # 35)  However, Stearman responds that, to the best of his knowledge, he cannot recall ever signing or seeing an executed copy of that agreement (or any like it).  (D.N. 8-1,

1

PageID # 61)  There "were contractual obligations between the parties," alleges Stearman, but "that agreement was [not necessarily] reduced to writing."  (D.N. 8, PageID # 57)  Neither party dwelled much on the contours of their relationship until quite recently.

In late 2013, Stearman became ill; his illness, coupled with family difficulties, caused him to miss work on several occasions in 2013 and 2014.  (D.N. 1, PageID # 2)  Two days after missing work due to family difficulties, Stearman was allegedly terminated from Ferro Coals. (*Id.*, PageID # 3)  Stearman further alleges that he was replaced by "a significantly younger employee" and that he was not paid for unused vacation time and unpaid commissions accrued prior to his termination.  (*Id.*)

Stearman filed suit against Ferro Coals on January 7, 2015, alleging that Ferro Coals violated the Kentucky Civil Rights Act, the Kentucky Equal Opportunities Act, and the Employee Retirement Income Security Act by terminating him on account of his age and medical condition, as well as the Kentucky Wages and Hours Act when it refused to pay him for his unused vacation time and commissions due.  Ferro Coals has counterclaimed for breach of contract, breach of fiduciary duty, and tortious interference with a business relationship, the crux of those claims being that Stearman "divulged confidential customer information to his son-in-law" and approached one of Ferro Coals' suppliers in order to help his son-in-law's business prospects.  (D.N. 4, PageID # 26; *see also id.*, PageID # 26-28)  Ferro Coals now seeks to transfer this case to the Eastern District of Kentucky, Lexington Division.  (D.N. 6, PageID # 39)

**II.**

28 U.S.C. § 1404(a) provides that, for "the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  The plain text of § 1404(a) requires a two-part analysis.  The

2

Court must first determine if the action could have originally been filed in the transferee district. *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). If so, the Court must determine "whether, on balance, a transfer would serve 'the convenience of the parties and witnesses' and otherwise promote 'the interest of justice.'" *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 134 S. Ct. 568, 581 (2013) (quoting 28 U.S.C. § 1404(a)).

In the usual case, the Court evaluates various private- and public-interest factors, always mindful to "give some weight to the [plaintiff's] choice of forum." *Id.* Factors relevant to the parties' private interests include (1) the convenience of the parties, (2) the convenience of the witnesses, (3) the accessibility of relevant evidence, (4) the availability of compulsory process to make reluctant witnesses testify, (5) the cost of obtaining willing witnesses' testimony, and (6) any other practical problems that make trial of a case easy, expeditious, and inexpensive. *Reese v. CHN Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009); *accord Atl. Marine*, 134 S. Ct. at 581 n.6. Public-interest factors comprise the second category. Although more amorphous than the first, these factors involve such matters as (1) administrative difficulties flowing from court congestion, (2) the local interest in deciding the controversy at home, and (3) in a diversity case, the interest of having the trial in a forum familiar with governing law. *Atl. Marine*, 134 S. Ct. at 581 n.6.

Neither recitation is exhaustive, but each is illustrative of the issues typically considered by the courts of this Circuit. *See, e.g.*, *Reese*, 574 F.3d at 320. "As the permissive language of the transfer statute suggests, district courts have 'broad discretion' to determine when party 'convenience' or 'the interest of justice' make[s] a transfer appropriate." *Id.* The movant bears the burden of showing that transfer is appropriate. *Boiler Specialist, LLC v. Corrosion*

*Monitoring Servs., Inc.*, No. 1:12-CV-47, 2012 WL 3060385, at *2 (W.D. Ky. July 26, 2012) (collecting cases).

But that balancing act changes when the parties have entered into a contract that includes a valid forum-selection clause. *In re Union Elec. Co.*, 787 F.3d 903, 906 (8th Cir. 2015) (discussing the "bifurcated system of analysis for forum-based motions to transfer under § 1404(a)" post-*Atlantic Marine*). First and foremost, "[t]o establish a valid forum selection clause, a party must first establish that there is a valid contract that contains a forum selection clause." *Diverse Elements, Inc. v. Ecommerce, Inc.*, 5 F. Supp. 3d 1378, 1381 (S.D. Fla. 2014) (citing *Segal v. Amazon.com, Inc.*, 763 F. Supp. 2d 1367, 1369 (S.D. Fla. 2011)); *accord Langley v. Prudential Mortg. Capital Co.*, 546 F.3d 365, 368 (6th Cir. 2008) (per curiam). "Kentucky law governs the initial question of whether the agreements containing the forum selection clauses were valid." *Langley*, 546 F.3d at 368 (citing *Inghram v. Universal Indus. Gases, Inc.*, No. 05-CV-19, 2006 WL 306650, at *1 (E.D. Tenn. Feb. 8, 2006)). The movant bears the burden of showing the formation of a valid contract. *Diverse Elements*, 5 F. Supp. 3d at 1381. So long as the movant shows that the parties formed a contract containing a forum-selection clause, the clause is prima facie valid, *see M/S Breman v. Off-Shore Co.*, 407 U.S. 1, 10 (1972), and the Court will give it "controlling weight in all but the most exceptional cases," *Atl. Marine*, 134 S. Ct. at 581 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)) (internal quotation marks omitted).

### III.

Ferro Coals seeks to transfer this action to the Eastern District of Kentucky, Lexington Division. Accordingly, the Court will first consider whether Stearman could have commenced his action in that district. If so, the Court must ascertain whether the parties entered into an

enforceable contract with a valid forum-selection clause.  After making that determination, the Court will balance the private- and public-interest factors as appropriate.

## A.

Venue is proper in this District and in the Eastern District of Kentucky, Lexington Division.  *See* 28 U.S.C. § 1391(b)(1)–(2); 29 U.S.C § 1132(e)(2).  Neither party disputes that conclusion.  Because Stearman could have commenced this action in the Eastern District of Kentucky, Lexington Division, Ferro Coals may pursue its Motion under § 1404(a).  *See* 28 U.S.C. § 1404(a) (providing that a district court may transfer an action "to any other district or division where it might have been brought").

## B.

On the present record, the Court concludes that Ferro Coals has not shown the unexecuted Employment Agreement, or the forum-selection clause contained in it, to be an enforceable contract under Kentucky law.

While the Employment Agreement does contain a forum-selection clause, the Agreement is not signed by Stearman or, for that matter, by Bennett, despite the presence of blank "signature blocks" for both.  (D.N. 4-1, PageID # 35-36)  Though not necessarily fatal, the absence of the parties' signatures complicates the Court's analysis.  *Cf. In re Rolls Royce Corp.*, 775 F.3d 671, 679 (5th Cir. 2014) ("For cases where all parties signed a forum selection contract, the analysis is easy: except in a truly exceptional case, the contract controls.  But not so where, as here, not all parties to the lawsuit have entered into a forum selection agreement.").  After all, "[c]ontracting parties typically manifest their agreement by signing the contract," *Braxton v. O'Charley's Rest. Props., LLC*, 1 F. Supp. 3d 722, 726 (W.D. Ky. 2014), and as Stearman points out, Ferro Coals' failure to produce an executed document is curious, seeing as it "is the custodian of such

records." (D.N. 8, PageID # 57)  Despite being on notice of the omission (*see* D.N. 8, PageID # 57-58), Ferro Coals does not directly address the point in its later filings.  (*See* D.N. 9, PageID # 67-69)  Therefore, Ferro Coals apparently concedes that the Employment Agreement was never formally executed—or, at the very least, that no executed copy is still around.  *Cf. McNair v. Monsanto Co.*, 279 F. Supp. 2d 1290, 1303–05 (M.D. Ga. 2003) (observing that such contracts "should be a part of the [d]efendant['s] business records and contain a valid signature").

Instead, Ferro Coals argues that "Stearman's course of conduct"—i.e., his accepting employment with the company—evidence his acceptance of the Employment Agreement.  (D.N. 9, PageID # 69)  True enough, "it is not always necessary for both parties to sign a contract" in order to create an enforceable agreement so long as "their assent is otherwise indicated." *Cowden Mfg. Co. v. Sys. Equip. Lessors, Inc.*, 608 S.W.2d 58, 61 (Ky. Ct. App. 1980) (quoting 17 Am. Jur. 2d *Contracts* § 70 (internal quotation marks omitted)).  But while it is "certainly possible for an unsigned, written contract" to bind Stearman, *Adler v. Elk Glenn, LLC*, No. 12-85-ART, 2013 WL 6632057, at *7 (E.D. Ky. Dec. 17, 2013), the record does not support such a conclusion here.

Other than the uncontested fact that it employed Stearman, Ferro Coals has come forward with little to no evidence indicating Stearman's assent to the Employment Agreement generally, or to the forum-selection provision more specifically.  *Braxton v. O'Charley's Restaurant Properties, LLC* illustrates that evidentiary deficit.  In *Braxton*, an employer moved to compel arbitration on the basis of an arbitration agreement between it and three of its former employees. 1 F. Supp. 3d at 724.  The employees contested the validity of the arbitration agreement, denying (in no uncertain terms and in sworn affidavits) ever "entering into [an] arbitration agreement" with the employer.  *Id*. at 726.  After reviewing the arbitration agreement under Kentucky

6

contract formation principles, *id.*, the district court concluded that the employees "assent[ed] to the arbitration agreement and its mandatory arbitration requirement," *id.* at 728. To arrive at that conclusion, the court relied on sworn affidavits from the employer, which described how it assigned unique employee identification numbers and required prospective employees to consent to the arbitration agreement; computer printouts, which reflected that each of the employees electronically signed the arbitration agreement; and additional computer printouts, which indicated that each employee received a copy of the employee handbook. *Id.* at 726–27.

In contrast to the employer in *Braxton*, Ferro Coals merely says in its Reply that Stearman "was provided a copy of the [Employment Agreement]" and that "both parties understood that [Stearman's] acceptance of the position was contingent upon his consent" to the Agreement. (D.N. 9, PageID # 68) But it offers no evidence to support those statements.[1] Likewise, while Ferro Coals makes mention that its Employee Handbook "mirrored" the provisions of the Employment Agreement (D.N. 9, PageID # 69), it goes no further with that point: the Handbook is not included in the record, and even if it were, the record does not indicate that Stearman received a copy. Most important of all, nothing in the record indicates

---

[1] Ferro Coals does refer to conduct allegedly consistent with certain provisions of the Employment Agreement as evidence that Stearman accepted the Agreement. (*See* D.N. 9, PageID # 69) For example, Ferro Coals points out that Stearman's base salary conforms to that outlined in the Agreement. (*See* D.N. 9, PageID # 69) The parties do appear to agree as to the amount of Stearman's base salary. (*Compare* D.N. 1, PageID # 2 ("[Stearman's] annual pay was $85,000 . . . ."), *with* D.N. 4-1, PageID # 31 ("Employee shall be paid a base salary of [$85,000] per year . . . .")).

Yet the parties disagree on much more. While the Agreement specifies that Stearman was to receive a quarterly commission based on "25% of the net profits collected by [Ferro Coals] in excess of $125,000 generated" from Stearman's efforts, (D.N. 4-1, PageID # 32) Stearman alleges that his commission was "based on gross profits." (D.N. 1, PageID # 2) Again, while the Agreement suggests that Stearman would be entitled to fifteen "working day[s] of vacation for each full year of employment" (D.N. 4-1, PageID # 32), Stearman says that he "earned eight hours of vacation per month worked." (D.N. 1, PageID # 2) Without more, it cannot be said that Stearman assented to the Agreement merely because he accepted a base salary in the same amount as it recited.

that Stearman was "informed of the [Employment Agreement], [was] allowed the opportunity to review it, [or was] informed that [he] must agree to its terms as a condition of [his] employment." *Braxton*, 1 F. Supp. 3d at 728.

The only testimony in the record is Stearman's sworn affidavit. In it, Stearman avers that he recalls neither executing the Employment Agreement (or any other document like it), nor does he "know of any other employee of Ferro Coals" who has done so. (D.N. 8-1, PageID # 61) Ferro Coals offers no evidence to contradict those statements.

In short, there is nothing in the record to support a finding that Stearman manifested his assent to the Employment Agreement or, more specifically, to the forum-selection clause. Therefore, on the present record and for purposes of this Motion, the Court holds that the forum-selection clause contained in the Employment Agreement does not rise to the level of an enforceable contract under Kentucky law. *See, e.g.*, *Diverse Elements*, 5 F. Supp. 3d at 1381–82 (refusing to enforce a forum-selection clause where the clause was the product of an invalid, unilateral modification to a preexisting contract ); *McNair*, 279 F. Supp. 2d at 1303–05 (refusing to find that the plaintiffs were "contractually bound" to a forum-selection clause where the movant failed to produce an executed contract containing a forum-selection clause); *Lujan v. Alorica*, 445 S.W.3d 443, 447–50 (Tex. App. 2014) (refusing to enforce a forum-selection clause where the employee never executed the contract containing the clause).

## C.

In the absence of a forum-selection clause, the Court concludes that the weight of private- and public-interest factors does not merit transferring this action to the Eastern District of Kentucky, Lexington Division.

**1.**

The convenience of the parties weighs in favor of Stearman's choice of venue. "Convenience is generally a matter of the parties' physical location in relation to the plaintiff's choice of forum." *Boiler Specialist*, 2012 WL 3060385, at *3; *see also* 15 Charles Alan Wright et al., *Federal Practice and Procedure* § 3849, Westlaw (database updated April 2015) ("In determining the relative convenience of the different fora for each party, the court, not surprisingly, considers the residence of the parties."). As far as the record reveals, Stearman is a resident of Jeffersonville, Indiana. (D.N. 1, PageID # 1)  Ferro Coals is incorporated in Kentucky (D.N. 1, PageID # 1), and neither party has alleged where in the Commonwealth its principal place of business is located. Even assuming that Ferro Coals would be at some disadvantage or might incur additional costs from litigating in this District, the same could be said for Stearman if this Court transferred the matter to the Eastern District of Kentucky. When that is the case, "the tie is awarded to the plaintiff." *In re Nat'l Presto Indus.*, 347 F.3d 662, 665 (7th Cir. 2003); *see also* Wright et al., *supra*, § 3849 ("[T]ransfer will be refused if the effect of a change of venue would be merely to shift the inconvenience from one party to the other.").

In addition to the parties' respective locations, the Court also concludes that there are other individualized, case-by-case considerations which make this District the most convenient and fair for the parties. Specifically, the Court is concerned by Stearman's poor health. (D.N. 1, PageID # 2)  Just as the movant's "medical disability can support a motion to transfer venue," *Elemary v. Philipp Holzmann A.G.*, 533 F. Supp. 2d 144, 153 (D.D.C. 2008), so too may the opponent's health counsel against transfer. *See Detrick v. 84 Lumber Co.*, No. 5:06CV2732, 2007 WL 1231636, at *2 (N.D. Ohio Apr. 24, 2007) (denying § 1404(a) motion in light of, *inter alia*, the plaintiff's poor health). *See generally* Wright et al., *supra*, § 3849 n.21 (collecting

cases). Stearman's health issues could create significant inconvenience for him and might limit his ability to prosecute this action. In sum, the convenience of the parties weighs against transferring this action to the Eastern District of Kentucky.

Likewise, the convenience of potential witnesses does not justify disturbing Stearman's choice of venue. "The convenience of witnesses, particularly nonparty witnesses important to the resolution of the case, is often cited as the most significant factor in ruling on a motion to transfer under 28 U.S.C. § 1404(a)." Wright et al., *supra*, § 3851. However, courts in this Circuit have found that inconvenience to party witnesses "is not sufficient in itself to justify, much less require, a transfer." *Langton v. Combalecer*, No. 06-11987, 2007 WL 925736, at *2 (E.D. Mich. Mar. 26, 2007) (quoting *Holiday Rambler Corp. v. Am. Motors Corp.*, 254 F. Supp. 137, 139 (W.D. Mich. 1966) (internal quotation marks omitted)). It is the convenience of nonparty witnesses "that is the more important factor and is accorded greater weight." *Boiler Specialist*, 2012 WL 3060385, at *3 (quoting *Gundle Lining Constr. Corp. v. Fireman's Fund Ins. Co.*, 844 F. Supp. 1163, 1166 (S.D. Tex. 1994) (internal quotation marks omitted)).

While Ferro Coals has identified three witnesses who communicated with Stearman and whose testimony might be relevant to this action (*see* D.N. 9, PageID # 70), all are employees of Ferro Coals and so are properly characterized as party witnesses. Likewise, Stearman himself is a party witness. Neither Ferro Coals nor Stearman has identified any nonparty witnesses who would be inconvenienced, or outside of this Court's subpoena power, absent transfer. *See Boiler Specialist*, 2012 WL 3060385, at *3–4. Therefore, the Court finds that this factor does not weigh in favor of, or in opposition to, transfer. *Accord Cowden v. Parker & Assocs., Inc.*, No. 09-CV-0323-KKC, 2010 WL 715850, at *3 (E.D. Ky. Feb. 22, 2010).

Moreover, the relative ease of access to sources of proof favors neither venue.  According to Ferro Coals, a majority of its "company records are located in Harlan, Kentucky."  (D.N. 9, PageID # 70)  For his part, Stearman says that such documentary evidence is equally likely to be located in Louisville, Kentucky, given that Stearman's office was located there.  (D.N. 8, PageID # 58)  While the location of physical evidence, such as documents, is relevant, *see Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1291 (5th Cir. 1994), technology has changed things, and the factor is entitled to comparatively "little weight."  Wright et al., *supra*, § 3853.  That point rings all the more true when, as here, the documentary evidence will largely consist of communications already in electronic form.  (*See* D.N. 9, PageID # 69-70)  Hence, insofar as "technological advancements have facilitated the electronic storage and transmission of documents from one forum to another," the Court finds this factor to be neutral.  *Cowden*, 2010 WL 715850, at *4 (citing *Converting Alts. Int'l, L.L.C. v. B & D Specialty Servs. Inc.*, No. 06-CV-13695, 2007 WL 851003, at *9 (E.D. Mich. Mar. 16, 2007)).

The parties do not address the remaining private-interest factors, such as the availability of compulsory process or any potential issues relating to the expense of trying Stearman's case in this District.  Regardless, the Court finds these factors to be insignificant in light of its analysis of what it considers to be the most pertinent issues on the limited record available.  The weight of the private-interest factors bears against transfer.

**2.**

Nor does the Court conclude that transfer would be in the interest of justice.  First, this Court has already familiarized itself with this matter, and there is no evidence that the Eastern District of Kentucky would handle it in a more expeditious manner.  *See In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003) (holding that district court erred in giving weight to "the factor

11

of 'possibility of delay . . . if transfer is granted'" where no record evidence supported that conclusion).  Second, neither party suggests why the Eastern District of Kentucky would be more interested in resolving Stearman's case than this District.  Third, the Court's familiarity with applicable law is not a relevant factor, as Ferro Coals merely seeks transfer to the Eastern District of Kentucky.  *Cf. Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp. 2d 627, 635 (E.D. Va. 2006) ("[B]ecause this action arises under federal law, this Court cannot be presumed to have greater knowledge of the applicable law than does the federal court in South Carolina." (citing Wright et al., *supra*, § 3854)).  Fourth, the sheer proximity between this Court and the Eastern District of Kentucky, Lexington Division weighs against transfer:  If "Chicago is relatively close to Cleveland, and an easy commute," *Progressive Plastics, Inc. v. Nat'l Liquid Packaging*, LLC, No. 1:07 CV 47, 2007 WL 593555, at *2 (N.D. Ohio Feb. 21, 2007), the same could more easily be said about Louisville and Lexington.  "Courts generally have found such a distance negligible as a basis for a discretionary venue change."  *Bay Cty. Democratic Party v. Land*, 340 F. Supp. 2d 802, 809 (E.D. Mich. 2004) (citing *Carlile v. Cont'l Airlines, Inc.*, 953 F. Supp. 169, 171 (S.D. Tex. 1997); *Leesona Corp. v. Duplan Corp.*, 317 F. Supp. 290, 299–300 (D.R.I. 1970)); *accord United Parcel Serv. of Am., Inc. v. Brown*, No. 08 CIV. 2902 (TPG), 2009 WL 928292, at *2 (S.D.N.Y. Mar. 30, 2009) (refusing transfer where only 60 miles separated transferor and transferee courthouses); *Celgene Corp. v. Abrika Pharm., Inc.*, No. CIV.A.06 5818 DSW, 2007 WL 1456156, at *5 & n.4 (D.N.J. May 17, 2007) (refusing transfer where only 110 miles separated transferor and transferee courthouses); *Med. Liab. Mut. Ins. Co. v. Alan Curtis, L.L.C.*, No. 4:05CV1319JMM, 2006 WL 358309, at *1 (E.D. Ark. Feb. 16, 2006) (refusing transfer where transferor and transferee divisions were "separated by a little more than

12

two hours of travel by interstate").[2]   Therefore, the weight of the public-interest factors also cautions against transfer.

## IV.

For the reasons discussed above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** that Defendant's Motion to Enforce the Parties' Agreement Regarding Venue and Motion to Transfer (D.N. 6) is **DENIED**.

---

[2]   In point of fact, the distance between the Western District of Kentucky, Louisville Division and the Eastern District of Kentucky, Lexington Division is approximately 80 miles.

13