UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

JOSEPH LUTHER STEARMAN,                                              Plaintiff,

v.                                               Civil Action No. 3:15-cv-31-DJH-DW

FERRO COALS, INC., et al.,                                           Defendants.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiff Joseph Luther Stearman formerly worked for Ferro Coals, Inc. as Vice President of Sales. Stearman sued Ferro Coals, its president Clyde Vester Bennett IV (Bennett IV), and its owner Clyde Vester Bennett III (Bennett III) after he was terminated at the age of sixty-seven. Stearman asserts claims for (1) age discrimination under the Kentucky Civil Rights Act (KCRA), (2) disability discrimination under the KCRA, (3) a violation of the Kentucky Equal Opportunities Act, (4) Employee Retirement Income Security Act (ERISA) interference, (5) a violation of the Kentucky Wage and Hour Act, and (6) conspiracy to retaliate and to discriminate under the KCRA. (Docket No. 29) Defendants seek summary judgment on all claims asserted by Stearman. (D.N. 41) For the reasons explained below, Defendants' motion will be granted.

I.  **Background**

Ferro Coals hired Stearman as Vice President of Sales in 2009. (D.N. 41-2, PageID # 198, 200) Stearman was sixty-two years old at that time. (*Id.*, PageID # 200) As Vice President of Sales, Stearman was responsible for identifying customers, responding to solicitations and invitations to bid, and communicating with customers. (*Id.*, PageID # 198)

Stearman suffered a heart attack and prostate cancer while he was employed by Ferro Coals. (D.N. 46-1, PageID # 274) As a result, Stearman necessarily took time away from work.

1

(*Id.*) Stearman alleges in his complaint that Defendants would not let him return to work after he took medical leave (D.N. 29, PageID # 142), but he cites no evidence in support of that allegation. (*See* D.N. 46, PageID # 256, 260) Stearman testified that he returned to work "full steam" after receiving treatment. (D.N. 41-2, PageID # 209)

In 2012, Stearman received an email from Bennett IV stating, "We need to suspend all travel until further notice." (D.N. 46-7, PageID # 357; D.N. 41-2, PageID # 206) In 2013, Stearman requested and received approval to attend a seminar in Myrtle Beach. (D.N. 41-2, PageID # 206) However, when Stearman requested approval to attend the same seminar in 2014, he did not receive a response. (*Id.*; D.N. 46-1, PageID # 288) Nevertheless, Stearman attended the seminar in 2014, putting approximately $2,500 in charges on the company credit card. (D.N. 46-1, PageID # 302)

Stearman's employment with Ferro Coals was terminated during the summer of 2014 when he was sixty-seven years old. (D.N. 41-2, PageID # 209; D.N. 46-1, PageID # 282; *see* D.N. 41-2, PageID # 200) Stearman testified that he was not suffering from any serious health issues and did not consider himself disabled at the time of his termination. (D.N. 41-2, PageID # 209; D.N. 50-2, PageID # 479) Bennett IV told Stearman that he was being terminated for his unapproved Myrtle Beach trip. (D.N. 50-1, PageID # 473) Following Stearman's termination, Bennett III wrote a letter to the Kentucky Unemployment Insurance Commission stating that Stearman was terminated for cause and challenging Stearman's award of unemployment. (D.N. 46-10, PageID # 364)

Defendants did not hire a new Vice President of Sales after Stearman's termination. (D.N. 41-2, PageID 198) Michael Canada, Ferro Coals' field representative, took over Stearman's duties after Stearman was terminated. (D.N. 46-16, PageID # 377, 380-82; D.N. 46-

17, PageID # 418) Canada's job duties did not otherwise change after Stearman's termination. (D.N. 46-16, PageID # 380) Canada is nearly twenty years younger than Stearman. (*See* D.N. 46-1, PageID # 284, 289; D.N. 46-16, PageID # 398)

Stearman had the highest monthly health-insurance premium of any Ferro Coals employee in 2013. (D.N. 50-3, PageID # 483) But after Stearman became eligible for Medicare, his total monthly premium was approximately $105. (D.N. 41-2, PageID # 208) Defendants would reimburse Stearman for the $105 premium each month, which was substantially less than what they were paying for their other employees in 2014. (*Id.*; *see* D.N. 50-3, PageID # 484)

While working for Ferro Coals, Stearman was entitled to a commission bonus of twenty-five percent of net profits over $125,000. (D.N. 46-2, PageID # 310) In 2013, Stearman was eligible for and received a commission bonus. (*Id.*) Defendants had previously paid their employees an additional Christmas bonus of several thousand dollars. (*Id.*) The Christmas bonuses were later suspended, however, and Stearman did not receive a Christmas bonus in 2013. (*Id.*, PageID # 310-11) There was no agreement between Stearman and Defendants regarding a Christmas bonus, and Stearman did not expect that bonus. (D.N. 41-2, PageID # 202)

Stearman filed suit against Ferro Coals, Ferro Coals' owner (Bennett III), and Ferro Coals' president (Bennett IV). (D.N. 29, PageID # 140-41; D.N. 34, PageID # 161-62; D.N. 46-1, PageID # 267) As noted in the parties' briefs, Bennett III passed away on December 18, 2016. (*See* D.N. 41-1, PageID # 178; D.N. 46, PageID # 237) The Court asked for supplemental briefing on the status of Stearman's claims against Bennett III. (D.N. 51) In their supplemental briefs, the parties agreed that all claims against Bennett III should be dismissed. (*See* D.N. 52;

D.N. 53) The Court's analysis is therefore limited to Stearman's remaining claims against Ferro Coals and Bennett IV.

Stearman alleges that Ferro Coals discriminated against him based on his age in violation of the KCRA (Count I), discriminated against him based on his disability in violation of the KCRA (Count II), interfered with his rights under ERISA (Count IV), and violated the Kentucky Wage and Hour Act by failing to pay him certain bonuses and commissions (Count V). (D.N. 29) He alleges that both Ferro Coals and Bennett IV violated the Kentucky Equal Opportunities Act by terminating him because of his disability (Count III) and conspired to retaliate and to discriminate against him in violation of the KCRA (Count VI). (*Id.*)

## II. Standard

Summary judgment is required when the moving party shows, using evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see* 56(c)(1). "A 'genuine issue of material fact exists when there is sufficient evidence for a trier of fact to find for the non-moving party.'" *Bush v. Compass Grp. USA, Inc.*, 683 F. App'x 440, 444 (6th Cir. 2017) (quoting *Brown v. Battle Creek Police Dep't*, 844 F.3d 556, 565 (6th Cir. 2016)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* (emphasis in original) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

For purposes of summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014) (citing *Anderson*, 477 U.S. at 255). However, the Court "need consider only the cited

materials." Fed. R. Civ. P. 56(c)(3); *see Shreve v. Franklin Cty., Ohio*, 743 F.3d 126, 136 (6th Cir. 2014). If the nonmoving party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the fact may be treated as undisputed. Fed. R. Civ. P. 56(e). To survive a motion for summary judgment, the nonmoving party must establish a genuine issue of material fact with respect to each element of each of his claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (noting that "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial").

### III. Discussion

Defendants argue that there is no evidence supporting any of Stearman's claims. (D.N. 41-1, PageID # 178) Stearman responds that he has presented evidence to support all of his claims. (D.N. 46, PageID # 264) The Court will discuss each claim in turn.

#### A. Age-Discrimination Claim

First, Stearman sues Ferro Coals for age discrimination in violation of the KCRA. (D.N. 29) Ferro Coals argues that (1) Stearman has not shown that he was replaced by someone who was not a member of the protected class; and (2) it had legitimate, nondiscriminatory reasons for its action. (D.N. 41-1, PageID # 185-86) Stearman responds that (1) he was replaced by someone twenty years younger; and (2) Ferro Coals' reasons for terminating him are inconsistent and merely pretextual. (D.N. 46, PageID # 243-46)

Age-discrimination claims brought under the KCRA are "analyzed in the same manner" as those brought under the Age Discrimination in Employment Act. *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 393 (6th Cir. 2008). Thus, Stearman must first establish a prima facie case of age discrimination by showing that he "(1) was a member of a protected class of persons (i.e.,

5

persons 40 years of age or over), (2) was discharged, (3) was qualified for the position held, and (4) was replaced by someone outside of the protected class." *Id.* at 394. If Stearman satisfies his prima facie burden, the burden shifts to Ferro Coals "to articulate a legitimate nondiscriminatory reason for the adverse employment action." *Id.* If Ferro Coals meets this burden, then the burden shifts back to Stearman "to show that the employer's nondiscriminatory explanation is a mere pretext for intentional age discrimination."[1] *Id.*

1. **Prima Facie Case**

The parties disagree only as to the fourth element of Stearman's prima facie case: whether he was replaced by someone outside of the protected class. Ferro Coals argues that Stearman was not replaced at all because it never hired a new Vice President of Sales. (D.N. 41-1, PageID # 185) Stearman argues that he was replaced by Canada, who was twenty years younger. (D.N. 46, PageID # 243)

In age-discrimination cases, the fourth element "is modified to require replacement not by a person outside the protected class, but merely replacement by a significantly younger person." *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003). "Age differences of ten or more years have generally been held to be sufficiently substantial to meet the requirement of the fourth part of [an] age discrimination prima facie case." *Id.* at 336. Thus, the twenty-year age difference between Stearman and Canada (*see* D.N. 46-1, PageID # 284, 289; D.N. 46-16, PageID # 398) is sufficient.

However, Stearman has not shown that he was replaced by Canada. "A 'person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other

---

[1] Both parties agree that Stearman's age-discrimination claim is analyzed under this burden-shifting framework, as Stearman has not presented direct evidence of age discrimination. (*See* D.N. 41-1, PageID # 185; D.N. 46, PageID # 240-41) *See also Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012).

duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties." *Grosjean*, 349 F.3d at 336 (quoting *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990)). Here, it is undisputed that Ferro Coals does not presently have a Vice President of Sales and has not had one since Stearman was terminated. (D.N. 41-2, PageID # 198) It is also undisputed that Canada, who was already working as a field representative for Ferro Coals, took over Stearman's duties after Stearman was terminated. (D.N. 46-16, PageID # 377, 380-82; D.N. 46-17, PageID # 418) But Ferro Coals asserts, and Stearman does not dispute, that Canada's job duties did not otherwise change after Stearman's termination. (D.N. 41-1, PageID # 185-86; D.N. 46-16, PageID # 380) In other words, Canada took on Stearman's duties in addition to his existing duties. An employee is not replaced simply because an existing employee assumes his job duties upon termination, performing those duties in addition to other functions. *See Grosjean*, 349 F.3d at 336; *see also Sahadi v. Reynolds Chem.*, 636 F.2d 1116, 1117 (6th Cir. 1980). Because the undisputed facts show that Stearman was not replaced by someone outside of the protected class, his prima facie case of age discrimination fails.

        **2.**        **Legitimate Reason and Pretext**

Even if Stearman could establish a prima facie case, his claim would still fail if Ferro Coals had a legitimate reason for his termination that was not merely pretext for discrimination. *See Allen*, 545 F.3d at 394. Ferro Coals argues that it had two legitimate reasons for terminating Stearman: his violation of the company's travel policy and the decline in the coal industry.

(D.N. 41-1, PageID # 186)  Stearman argues that Ferro Coals' reasons for firing him are shifting and opportunistic.[2]  (D.N. 46, PageID # 244)

Ferro Coals has met its burden of "articulat[ing] a legitimate nondiscriminatory reason for the adverse employment action." *Allen*, 545 F.3d at 394.  An employer meets this burden "by alleging that [the employee's] termination was the result of his violation of company policy." *Tinker v. Sears, Roebuck & Co.*, 127 F.3d 519, 523 (6th Cir. 1997).  In this case, Ferro Coals has offered Stearman's violation of company travel policy as a legitimate nondiscriminatory reason for his termination.  (D.N. 41-1, PageID # 186, 188)  Thus, Stearman is left with the burden to show that Ferro Coals' stated reason is mere pretext for discrimination.  *See Allen*, 545 F.3d at 394.  To meet this burden, Stearman must show "either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate his discharge, or (3) that they were insufficient to motivate discharge." *Id.* at 396.  Summary judgment is appropriate if (1) Stearman "only creat[es] a weak issue of fact as to whether [Ferro Coals'] reason was untrue"; and (2) "there is ample evidence to support [Ferro Coals'] position." *Abdulnour v. Campbell Soup Supply Co., LLC*, 502 F.3d 496, 504 (6th Cir. 2007) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000)).

First, Stearman argues that Ferro Coals' stated reason is not based in fact because prior to 2014, he used his company credit card to go to the same conference and was reimbursed without question.  (D.N. 46, PageID # 247)  The undisputed facts show that Stearman received an email from Bennett IV in 2012 stating, "We need to suspend all travel until further notice."  (D.N. 46-7, PageID # 357; D.N. 41-2, PageID # 206)  In 2013, Stearman requested and received approval

---

[2] Stearman asserts that Ferro Coals provided multiple reasons for his termination that changed over time.  (D.N. 46, PageID # 244-45)  But the evidence he cites shows only that Defendants made additional allegations of work-related misconduct against him when they brought various counterclaims.  (*See* D.N. 4)  Those counterclaims have since been dismissed.  (D.N. 44)

to attend a seminar in Myrtle Beach. (D.N. 41-2, PageID # 206) But it is undisputed that in 2014, when Stearman requested approval to attend the same seminar, he did not receive a response. (*Id.*; D.N. 46-1, PageID # 288) Nevertheless, Stearman attended, putting approximately $2,500 in charges on the company credit card. (D.N. 46-1, PageID # 302) Stearman does not dispute these facts, which show that he violated company policy as reflected in the 2012 email by attending the seminar and charging the company credit card without approval. Thus, the Court finds that Ferro Coals' stated reason—Stearman's violation of company policy—is based in undisputed fact.

Second, Stearman argues that Ferro Coals' stated reason did not actually motivate his termination. (D.N. 46, PageID # 249) He bases this argument on the following facts: (1) Stearman was the only employee at the company over the age of sixty-five; (2) Stearman was the only employee whom Ferro Coals had to provide with Medicare; (3) Stearman had taken time off work due to health problems; (4) Stearman was not given a reason when he was terminated; (5) Ferro Coals replaced Stearman with someone younger; and (6) no one close to Stearman's age remained with the company after his termination. (*Id.*, PageID # 250-51) To succeed in this argument, Stearman must show that it is "more likely than not" that Ferro Coals' stated reason is a pretext or coverup. *See Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994).

Although Stearman may have been Ferro Coals' only employee on Medicare, his total monthly premium was approximately $105, much less than that of any other employee. (D.N. 41-2, PageID # 208; *see* D.N. 50-3, PageID # 484) And although Stearman took time off from work for medical purposes, he was not suffering from any serious health issues at the time of his termination. (D.N. 50-2, PageID # 479) Moreover, Bennett IV did give Stearman a reason for

9

his termination: the unapproved Myrtle Beach trip. (D.N. 50-1, PageID # 473) Finally, Stearman was never replaced; his job duties were merely reassigned. *See supra* Section III.A.1. On balance, Stearman has not shown that it is more likely than not that he was fired because of his age. Thus, the Court finds that Ferro Coals was actually motivated by its stated reason in terminating Stearman.

Third, Stearman argues that Ferro Coals' stated reason was not sufficient to warrant his termination. (D.N. 46, PageID # 251) This showing ordinarily "consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct." *Manzer*, 29 F.3d at 1084. Stearman asserts that Canada traveled without permission (D.N. 46, PageID # 257), but the evidence Stearman cites shows that Canada asked for permission to travel. (*See id.*; D.N. 46-1, PageID # 293) Stearman additionally points out that, before his termination, he used the company credit card while traveling without repercussion. (D.N. 46, PageID # 252) But he omits the fact that he previously requested and was granted approval for his trips, whereas in 2014, he requested approval without a response. (D.N. 41-2, PageID # 206) The 2012 email made clear that all travel was suspended. (D.N. 46-7, PageID # 357) Stearman received this email but engaged in unapproved travel anyway. (D.N. 41-2, PageID # 206) Thus, the Court finds that Ferro Coals' stated reason was sufficient to warrant his termination.

In sum, Stearman is unable to make out his prima facie case, and even if he could, Ferro Coals has articulated a legitimate reason for his termination that he has not shown was mere pretext. Accordingly, the Court will grant Ferro Coals summary judgment on Stearman's age-discrimination claim.

### B. Disability-Discrimination Claim

Stearman also sued Ferro Coals for disability discrimination in violation of the KCRA. (D.N. 29) Ferro Coals argues that (1) Stearman was not disabled or treated differently than similarly situated persons for similar conduct; and (2) it had legitimate, nondiscriminatory reasons for its action. (D.N. 41-1, PageID # 189, 191) Stearman responds that (1) he was unquestionably disabled and treated differently than similarly situated employees for similar conduct; and (2) Ferro Coals' stated reasons for terminating him are ever-changing and merely pretextual. (D.N. 46, PageID # 255-57).

Disability-discrimination claims brought under the KCRA are analyzed in the same manner as those brought under the Americans with Disabilities Act. *Bryson v. Regis Corp.*, 498 F.3d 561, 574 (6th Cir. 2007). Thus, Stearman must first establish a prima facie case of disability discrimination by showing that "(1) [he] was 'disabled' within the meaning of the Act; (2) [he] was qualified for the position, with or without an accommodation; (3) [he] suffered an adverse employment decision with regard to the position in question; and (4) a non-disabled person replaced [him]."[3] *See Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 882 (6th Cir. 1996). If Stearman satisfies his prima facie burden, the burden shifts to Ferro Coals "to set forth a legitimate, nondiscriminatory reason for the adverse employment action." *See id.* at 883. If Ferro Coals meets this burden, then the burden shifts back to Stearman to show "that [Ferro Coals'] proffered reasons were . . . merely a pretext for illegal discrimination." *See id.*

---

[3] Both parties incorrectly describe this element as whether Stearman was treated differently than similarly situated employees for the same conduct. (D.N. 41-1, PageID # 189; D.N. 46, PageID # 254) In the case of termination, the issue is whether he was "replaced by someone who was not a member of the protected class"—i.e., a non-disabled person. *See Wheatley v. J.J.B. Hilliard, W.L. Lyons, Inc.*, No. 3:04-cv-726-S, 2006 WL 1523226, at *2 (W.D. Ky. May 25, 2006).

The parties disagree as to the first element of Stearman's prima facie case: whether he was disabled. Ferro Coals argues that Stearman is not disabled because he was not substantially limited in any major life activity. (D.N. 41-1, PageID # 190-91) Stearman argues that he is disabled due to a heart attack and multiple occurrences of prostate cancer. (D.N. 46, PageID # 255-56)

Disability is defined by statute as "(a) A physical or mental impairment that substantially limits one (1) or more of the major life activities of the individual; (b) A record of such an impairment; or (c) Being regarded as having such an impairment." Ky. Rev. Stat. § 344.010(4). Substantial limitation means the inability "to perform a major life activity that the average person in the general population can perform" or a significant restriction "as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." *Bryson*, 498 F.3d at 575. "When determining whether an individual is substantially limited in a major life activity, courts will further consider the nature and severity of the impairment, the duration of the impairment, and the permanent or long-term impact of the impairment." *Darby v. Gordon Food Servs., Inc.*, No. 3:11-cv-00646-DJH, 2015 WL 3622529, at *7 (W.D. Ky. June 9, 2015) (citing *Howard Baer, Inc. v. Schave*, 127 S.W.3d 589, 593 (Ky. 2003)).

Stearman points to his heart attack and prostate cancer as evidence of disability. (D.N. 46, PageID # 255; D.N. 46-1, PageID # 274) But "[m]erely having an impairment does not make one disabled." *Bryson*, 498 F.3d at 575 (quoting *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 195 (2002)). Stearman must also show that he was substantially limited in a major life activity. *See* Ky. Rev. Stat. § 344.010(4). Working unquestionably qualifies as a major life

activity. *See Bryson*, 498 F.3d at 576. But Stearman has not presented evidence to show that his heart attack or cancer substantially limited his ability to work. To the contrary, the undisputed facts show that Stearman came back to work "full steam" after receiving treatment. (D.N. 41-2, PageID # 209)

Nor can Stearman succeed under a "regarded as" theory of disability. "A claim that an employer perceived an employee as being unable to work requires 'proof that the employer regarded the employee as significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes.'" *Spees v. James Marine, Inc.*, 617 F.3d 380, 397 (6th Cir. 2010) (quoting *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 704 (6th Cir. 2008)). The only proof Stearman offers is his history of heart attack and cancer. (*See* D.N. 46, PageID # 255-56; D.N. 46-1, PageID # 274) He offers no proof that any of the defendants regarded him as restricted in his ability to work. Stearman alleges in his complaint that Defendants would not let him return to work after he took medical leave (D.N. 29, PageID # 142), but he cites no evidence in support of that allegation. (*See* D.N. 46, PageID # 256) "A party asserting that a fact is genuinely disputed may not rely on the pleadings to establish that fact." *Shreve*, 743 F.3d at 132. Thus, the Court finds that Stearman was not disabled, and his prima facie case fails.

Even if Stearman could establish a prima facie case, his claim would still fail because Ferro Coals has set forth a legitimate nondiscriminatory reason for his termination that he has not shown was mere pretext. *See Kocsis*, 97 F.3d at 883; *supra* Section III.A.2. Accordingly, the Court will grant Ferro Coals summary judgment on Stearman's disability-discrimination claim.

C.  **Equal Opportunities Act Claim**

Third, Stearman sues Ferro Coals and Bennett IV for a violation of the Kentucky Equal Opportunities Act. (D.N. 29) The Kentucky Equal Opportunities Act prohibits any employer

13

from discharging or discriminating against any individual with a disability because of the person's physical disability. Ky. Rev. Stat. § 207.150(1). Physical disability is defined as "the physical condition of a person whether congenital or acquired, which constitutes a substantial disability to that person and is demonstrable by medically accepted clinical or laboratory diagnostic techniques." § 207.130(2). This Court has found that a person is not disabled under the statute if he is able to continue performing normal life activities. *See, e.g.*, *Baum v. Metro Restoration Servs., Inc.*, 240 F. Supp. 3d 684, 697 (W.D. Ky. 2017) (finding no disability where plaintiff "could carry on normal activities"); *Avis v. Am. Greetings Corp.*, No. 3:09-CV-00423, 2011 WL 777959, at *3 (W.D. Ky. Feb. 28, 2011) (finding no disability where plaintiff was able to carry out "domestic, work, and recreational activities"); *Hack v. C-Plant Fed. Credit Union*, No. 5:08-CV-00111-TBR, 2010 WL 2228276, at *6 (W.D. Ky. June 2, 2010) (finding no disability where plaintiff had no long-term complications from surgery, did not consider himself disabled, and was able to carry on normal activities like "bathing, doing chores, or engaging in normal relations with family").

Defendants argue that (1) Stearman was not disabled at the time of his termination; and (2) Stearman's discharge was not related to his health. (D.N. 41-1, PageID # 192) Stearman responds that (1) he has a physical disability; and (2) he was discriminated against and discharged because of his physical disability. (D.N. 46, PageID # 259) Thus, the parties disagree as to both elements of Stearman's prima facie case: whether he was disabled and whether he was discharged because of his disability. *See* Ky. Rev. Stat. § 207.150(1).

The undisputed facts show that Stearman returned to work "full steam" after his cancer treatment. (D.N. 41-2, PageID # 209) Stearman testified that he was not suffering from any

major health issues and did not consider himself disabled at the time he was terminated. (*Id.*) Thus, the Court finds that Stearman was not disabled within the meaning of the statute.

Even if Stearman was disabled, his claim would still fail because he has not shown that he was discharged because of his disability. Stearman alleges in his complaint that Defendants would not let him return to work after he took medical leave, (D.N. 29, PageID # 142), but he cites no evidence in support of that allegation. (*See* D.N. 46, PageID # 260) Again, a party cannot rely on the pleadings to establish that a fact is disputed. *Shreve*, 743 F.3d at 132. Accordingly, the Court will grant Defendants summary judgment on Stearman's Equal Opportunities Act claim.

### D. ERISA-Interference Claim

Fourth, Stearman sues Ferro Coals for ERISA interference in violation of 29 U.S.C. § 1140. (D.N. 29) Ferro Coals argues that Stearman has failed to produce any evidence to support his claim that it terminated him out of fear of substantial medical expenses and increased insurance premiums. (D.N. 41-1, PageID # 192-93) Stearman responds that (1) he was terminated after using his Medicare benefits extensively; and (2) he had the highest monthly insurance premium of any employee in 2013. (D.N. 46, PageID # 261-62)

> ERISA prohibits any person from discharging
>
> a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act, or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act.

29 U.S.C. § 1140. To avoid summary judgment on an ERISA-interference claim, "[Stearman] must show that [Ferro Coals] engaged in prohibited conduct for the purpose of interfering with [his] attainment of any right to which he may become entitled under an ERISA-protected plan."

15

*Roush v. Weastec, Inc.*, 96 F.3d 840, 845 (6th Cir. 1996). Further, Stearman "must demonstrate that [Ferro Coals] engaged in the prohibited conduct with the *specific intent* of violating ERISA." *Id.*

In this case, Stearman has not pointed to any evidence showing Ferro Coals' intent to violate ERISA. Stearman argues that he was terminated after using his Medicare benefits extensively (D.N. 46, PageID # 261), but he points only to evidence showing that he took medical leave in the past. (D.N. 46-1, PageID # 274) And the fact that Stearman took medical leave does not show that Ferro Coals intended to violate ERISA. *See Roush*, 96 F.3d at 845 (finding insufficient evidence of intent to interfere with ERISA rights where plaintiff took medical leave "exceed[ing] normal limits"). In addition, Stearman points to evidence showing that he had the highest monthly insurance premium of any Ferro Coals employee in 2013. (D.N. 50-3, PageID # 483) But the undisputed facts also show that after Stearman became eligible for Medicare, Ferro Coals reimbursed Stearman for the $105 premium each month. (D.N. 41-2, PageID # 208) The $105 monthly Medicare premium was substantially less than what Ferro Coals was paying for its other employees in 2014 when Stearman was terminated. (D.N. 46-1, PageID # 282; *see* D.N. 50-3, PageID # 484) Therefore, the fact that Stearman had the highest premium in 2013 does not show that Ferro Coals specifically intended to violate ERISA when it terminated him in 2014. Accordingly, the Court will grant Ferro Coals summary judgment on Stearman's ERISA-interference claim. *See Roush*, 96 F.3d at 845 (affirming summary judgment for defendant on plaintiff's ERISA-interference claim where plaintiff "failed to adduce evidence that suggests that defendant specifically intended to interfere with [his] rights under an ERISA-protected plan").

### E. Wage and Hour Act Claim

In his fifth claim, Stearman alleges that Ferro Coals violated the Kentucky Wage and Hour Act by failing to pay him certain bonuses and commissions. (D.N. 29) Ferro Coals argues that it paid Stearman all commissions owed to him. (D.N. 41-1, PageID # 193) Stearman responds that Ferro Coals subtracted the amount of his Christmas bonus from his commission bonus despite the fact that they never agreed to such an arrangement. (D.N. 46, PageID # 263)

The Kentucky Wage and Hour Act provides that "[n]o employer shall withhold from any employee any part of the wage agreed upon." Ky. Rev. Stat. § 337.060. The definition of "wage" includes commissions and bonuses "agreed upon by the employer and the employee or provided to employees as an established policy." § 337.010(1)(c)(1).

The undisputed facts show that Stearman was entitled to a commission bonus of twenty-five percent of net profits over $125,000. (D.N. 46-2, PageID # 310) In 2013, Stearman was eligible for and received a commission bonus. (*Id.*) In the past, Ferro Coals had paid employees an additional Christmas bonus that amounted to several thousand dollars. (*Id.*) Stearman did not receive a Christmas bonus in 2013. (*Id.*, PageID # 310-11) However, the undisputed facts show that there was no agreement between Stearman and Ferro Coals regarding a Christmas bonus and that Stearman did not expect that bonus. (D.N. 41-2, PageID # 202) And although Defendants had paid their employees Christmas bonuses in the past (D.N. 46-2, PageID # 310), Stearman has not shown that Ferro Coals had an established policy of giving Christmas bonuses. *See Francis v. Marshall*, 684 F. Supp. 2d 897, 911 (E.D. Ky. Feb. 2, 2010) (holding that evidence showing that employer paid three months of employee's health-insurance premiums was not enough to show an established policy of paying for such benefits). In other words, the only bonus that Stearman was entitled to was his commission bonus. The Court finds that Stearman and Ferro

Coals never agreed to a Christmas bonus, Ferro Coals had no established policy of giving Christmas bonuses, and Stearman had no reasonable expectation of receiving a Christmas bonus. Thus, Ferro Coals withheld no bonus owed Stearman. Accordingly, the Court will grant Ferro Coals summary judgment on Stearman's Wage and Hour Act claim.

### F. Conspiracy Claims

Finally, Stearman sues Ferro Coals and Bennett IV under the KCPA for conspiracy to retaliate and to discriminate. (D.N. 29) Defendants argue that (1) the adverse treatment Stearman claims to have suffered is insufficient to support a retaliation claim; and (2) there can be no conspiracy to discriminate because no discrimination took place. (D.N. 41-1, PageID # 194; D.N. 50, PageID # 470) Stearman responds that (1) he is not asserting a retaliation claim; and (2) Defendants discussed terminating him multiple times while he was having health problems due to age and disability. (D.N. 46, PageID # 263)

The KCRA makes it unlawful for two persons to conspire to "retaliate or discriminate in any manner against a person because he has opposed a practice declared unlawful by [the KCRA]." Ky. Rev. Stat. § 344.280(1). Although Stearman's complaint suggests a claim for conspiracy to retaliate (*see* D.N. 29, PageID # 148), his response to Defendants' motion for summary judgment asserts that he has not brought such a claim. (D.N. 46, PageID # 263) Instead, he appears to amend his claim to one of conspiracy to discriminate. (*See id.*) But Stearman may not expand his claims or assert new theories of recovery in response to a summary-judgment motion. *See Bridgeport Music, Inc. v. WM Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007). Regardless, any conspiracy claim under the KCRA would be barred by the intra-corporate conspiracy doctrine.

Under the intra-corporate conspiracy doctrine, "'a corporation cannot conspire with its own agents or employees' because the corporation and the employees 'are members of the same collective entity' and so 'there are not two separate "people" to form a conspiracy.'" *Bzura v. Lumber Liquidators, Inc.*, No. 3:13-CV-00661-CRS, 2014 WL 798155, at *3 (W.D. Ky. Feb. 27, 2014) (quoting *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 509-10 (6th Cir. 1991)). This Court has applied the doctrine to dismiss conspiracy claims under the KCRA. *See id.* at *3-4; *McGee v. Cont'l Mills, Inc.*, No. 5:09-cv-00155-R, 2009 WL 4825010, at *2-3 (W.D. Ky. Dec. 11, 2009). In *McGee*, the Court concluded that KCRA conspiracy claims were barred by the intra-corporate conspiracy doctrine after noting that the defendants were "a corporation and two of its employees." 2009 WL 4825010, at *2-3. In this case, the defendants are also a corporation, Ferro Coals, and one of its employees: Bennett IV. (*See* D.N. 29, PageID # 140-41; D.N. 34, PageID # 161-62; D.N. 46-1, PageID # 267) Therefore, the Court finds that, to the extent Stearman asserts KCRA conspiracy claims, they are barred by the intra-corporate conspiracy doctrine. Accordingly, the Court will grant Defendants summary judgment on Stearman's conspiracy claims.

**IV.  Conclusion**

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)  Plaintiff's claims against Clyde Vester Bennett III are **DISMISSED** with prejudice.

(2)  Defendants' motion for summary judgment (D.N. 41) is **REINSTATED** and **GRANTED**.

(3) A separate judgment will be entered this date.

November 28, 2017

**David J. Hale, Judge
United States District Court**